**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**


**HUMANA INSURANCE COMPANY**                    **CIVIL ACTION**

**VERSUS**

**JERRY LUKE LEBLANC, ET AL.**                         **NO. 07-594**


**CONSOLIDATED WITH**


**UNITED HEALTHCARE INSURANCE**                **CIVIL ACTION**
**COMPANY**

**VERSUS**

**HONORABLE KATHLEEN BLANCO**                  **NO. 07-532**
**THE GOVERNOR OF THE STATE OF**
**LOUISIANA**


<u>RULING ON APPLICATIONS FOR</u>
<u>PRELIMINARY AND PERMANENT INJUNCTION AND DECLARATORY</u>
<u>JUDGMENT</u>

Before the Court are the Applications for Preliminary Injunction (Docs. No. 6

and 62) and request for declaratory relief filed on behalf of Plaintiffs United

Healthcare Insurance Company ("United"), Humana Insurance Company, and

Humana Health Benefit Plan of Louisiana, Inc. (Collectively "Humana"). Jurisdiction

is based upon federal question, 28 U.S.C. §1331, 28 U.S.C. §1343 and 42 U.S.C.

§1983, since the parties assert constitutional claims under the Contracts Clause and

the Commerce Clause as well as claims of Due Process violations. Further, United

seeks declaratory relief pursuant to 28 U.S.C. §2201. Venue is proper in this district

since defendants Jerry Luke LeBlanc and Tommy D. Teague maintain their offices

in this district, and the events giving rise to this litigation occurred in this district.

The court received testimony and physical evidence in this matter at hearings

that were conducted over the course of five (5) days between September 14 and

October 12, 2007. Now, having reviewed the submissions of the parties and the

pertinent law, the Court finds that Plaintiffs' requests for injunctive relief and

declaratory judgment should be **GRANTED.**

## I. BACKGROUND

This is a consolidated action for preliminary and permanent injunctive relief

and declaratory judgment. United is a Connecticut healthcare corporation doing

business in the State of Louisiana. Humana Insurance Company is a business

corporation with its principal place of business in the state of Kentucky that is

authorized to do business in the State of Louisiana. Humana Health Benefit Plan of

Louisiana, Inc. is a health maintenance organization under the laws of the State of

Louisiana, with its principal place of business in the State of Louisiana.

Both Humana and United have entered into contractual agreements with the

Office of Group Benefits ("OGB"), an executive branch agency within the Division of

Administration of the Office of the Governor of the State of Louisiana.[1] The OGB

---

[1] La. R.S. 42:801(2007).

Doc#1687                                    2

procures and administers benefits for state employees, their dependents, and state retirees ("Participants") in nine separate specifically defined regions of the state. Defendant Tommy D. Teague serves as the Chief Executive Officer for the OGB. Mr. Teague serves at the pleasure of defendant, Jerry Luke LeBlanc, who serves as the Commissioner of Administration for the State of Louisiana.[2]

Until the 2006-2007 fiscal year, the benefit plans offered in each of the State's nine regions consisted of three self-insured options and one fully-insured option[3]:

(1) Preferred Provider Organization ("PPO Plan"), a self-insured plan;[4]

(2) Exclusive Provider Organization ("EPO Plan") a self-insured plan;

(3) Managed Care Organization ("MCO Plan"), a self-insured plan; and

(4) Health Maintenance Organization ("HMO Plan"), a fully-insured plan.

Prior to 2006, Humana, Vantage Health Plan ("Vantage")[5], and others underwrote the OGB's fully-insured HMO plan. However, beginning July 1, 2006, Humana administered the HMO option as a self-insured option in Regions 1–8 while

---

[2] La. R.S. 42:803(A)(2007).

[3] In a fully-insured plan, the full premium is paid to the insurance company (or HMO), regardless of the amount of the claims actually incurred, and the insurance company retains any amount of the premium not required to cover claims and plan expenses as profit.
In a self-insured plan, the health care company is paid only an administrative fee for administering the State's group benefits plan. As part of the self-insured arrangement, the State directly funds payment for claims, and all claims savings are reinvested directly back into the State self-insurance program.
United, Compl. at 3.

[4] This plan is self administered by the OGB.

[5] Vantage Health Plan is a Louisiana health maintenance organization.

Vantage provided the fully-insured HMO option only to plan participants in Region 9.

In 2006, during the time the OGB offered both a self-insured and fully-insured HMO option for its participants, it enlisted the actuarial advice of Mercer Health & Benefits, LLC. ("Mercer"), an independent consulting group. The State retained Mercer to perform studies to determine whether it could reduce and better manage its costs for insurance coverage by self-insuring <u>all</u> of its medical coverage. The study revealed that the State could save an estimated $29.1 million, or approximately 11 percent, by switching most of its insureds to a self-funded benefit program.[6]

Following the recommendation of Mercer, on August 28, 2006, the OGB publicly issued a Notice of Intent to Contract  ("NIC") for Administrative Services Only ("ASO") for its EPO and HMO plans (for fiscal year 2006-2007).  Around the same time, the OGB issued an additional NIC for the new Medicare Advantage Plan that it intended to offer participants in fiscal year 2007-2008.

On January 12, 2007, after a statewide competitive bidding process, the OGB accepted a bid from Humana to provide ASO for the OGB's self-insured HMO plan. The OGB additionally contracted with Humana to provide fully-insured Medicare Advantage plans to all OGB Medicare eligible retirees. United was awarded the contract as the ASO provider for the EPO benefit plan for the plan year beginning

---

[6] UHC Compl. at 4.

July 1, 2007. Vantage did not participate in the ASO NIC bid; and although it participated in the Medicare Advantage bid, it lost the bid to Humana.

On April 13, 2007, Louisiana State Representative Charles McDonald pre-filed House Bill 247 of the 2007 Regular Session of the Louisiana Legislature. Representative Francis Thompson co-authored the bill. The bill mandated that the OGB solicit proposals from and award fully-insured contracts to up to three "Louisiana HMOs"[7] in each of the state's nine regions, defining the term "Louisiana HMOs" to exclude companies such as Humana and United. Both legislative chambers ultimately passed House Bill 247 and sent it to Governor Blanco for executive action.

On July 19, 2007, Governor Kathleen Blanco signed House Bill 247 into law as Act 479 (2007) ("the Act"), which amended La. R.S. 42:802(B)(6) and enacted R.S. 42:802.1.

On July 27, 2007, United filed a complaint against Governor Blanco alleging that Act 479 violated the Contract and Commerce clauses as well as the Fifth and Fourteenth Amendments. On these premises, United sought several forms of relief:

---

[7] Act 479 defines the term "Louisiana HMO" as a health maintenance organization which meets ALL of the following criteria:
1) Offers fully insured commercial and/or Medicare Advantage products;
2) Is domiciled, licensed, and operating within the state;
3) Maintains its primary corporate office and at least seventy percent of its employees in the state; and
4) Maintains within the state its core business functions which include utilization review services, claim payment processes, customer service call centers, enrollment services, information technology services, and provider relations.

a declaratory judgment holding that Act 479 is unconstitutional, preliminary and permanent injunctive relief, and attorney's fees.

On August 1, 2007, pursuant to the provisions of Act 479, OGB publicly issued two Notices of Intent to Contract: one for a fully-insured HMO and a second for a Medicare Advantage Plan. The NICs requested proposals from any Louisiana HMO to provide fully-insured HMO coverage on a regional basis, as well as to provide Medicare Advantage HMO coverage on a statewide basis.

Shortly thereafter, on August 15, 2007, Humana filed a complaint and motion for temporary restraining order ("TRO") against Jerry Luke LeBlanc in his capacity as Commissioner of Administration for the State of Louisiana, and Tommy D. Teague in his capacity as Chief Executive Officer of the Office of Group Benefits for the State of Louisiana. Like United, Humana alleged that the Act violated the Contract and Commerce Clauses, as well as the Fifth and Fourteenth Amendments. Humana further alleged that enforcement of the Act subjected it to an actionable deprivation of its rights, privileges, and immunities secured by the Constitution and laws of the United States pursuant to 42 U.S.C. § 1983.[8]

On August 29, 2007, Preston Taylor, Gloria Taylor, Leon Price, and Sherra Fertitta Hicks ("Covered Persons") moved to intervene. Vantage Health Plan, Inc. ("Vantage") also moved to intervene on August 30, 2007. Both parties' motions to intervene were granted by the Court on September 6, 2007.

---

[8] Humana Compl. at 3.

This Court issued a temporary restraining order enjoining implementation of the Act on September 7, 2007. This TRO has been extended and maintained through completion of the trial on the merits on the preliminary and permanent injunction.

On September 10, 2007, both Jerry Luke Leblanc and Governor Kathleen Blanco moved to dismiss the actions brought against them by United and Humana under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for lack of jurisdiction and failure to state a claim. In support of their respective motions to dismiss, each argued that the Court did not have jurisdiction over the claims brought against them pursuant to the Eleventh Amendment of the United States Constitution.

The Court denied Jerry Luke LeBlanc's motion to dismiss on October 18, 2007.  However, on October 19, 2007, the Court granted Governor Blanco's motion to dismiss on the grounds that she did not have a "substantial connection" to the enforcement of Act 479, and therefore, the Eleventh Amendment shielded her from suit.  The Court now addresses the merits of Plaintiffs' application for declaratory judgment and preliminary and permanent injunction.

## II. LAW AND ANALYSIS

The Fifth Circuit holds that "[i]njunctive relief is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion."[9] The standard for a permanent injunction is

---

[9] **Holland Am. Ins. Co. v. Succession of Roy**, 777 F.2d 992, 997 (5th Cir. 1985).

"essentially the same" as for a preliminary injunction, in that the plaintiff must establish each of the following four elements: (1) actual success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) that the threatened injury outweighs any damage that the injunction may cause the defendants; and (4) that the injunction will not impair the public interest.[10] The party seeking the preliminary injunction must "clearly carry the burden of persuasion on all four . . . prerequisites."[11] The difference between the standard for a permanent injunction and the standard for a preliminary injunction is that in the former the court determines the plaintiff's success on the merits rather than the plaintiff's likelihood of success on the merits.[12]

## A. Actual Success on the Merits

Plaintiffs allege that Act 479 violates the Contracts Clause, the Due Process Clause, and the Commerce Clause of the United States Constitution. The Court now examines each of those claims in turn.

---

[10] **Enrique Bernat F., S.A. v. Guadalajara, Inc**., 210 F.3d 439, 442 (5th Cir. 2000); **Millennium Restaurants Group, Inc. v. City of Dallas**, 191 F.Supp.2d 802, 809 (N.D.Tex. 2002); see also **Valley v. Rapides Parish School Board**, 118 F.3d 1047, 1051 (5th Cir. 1997); **Sierra Club v. FDIC**, 992 F.2d 545 (5th Cir. 1993); **Canal Authority of Florida v. Callaway**, 489 F.2d 567, 572 (5th Cir. 1974).

[11] **Cherokee Pump & Equipment, Inc. v. Aurora Pump**, 38 F.3d 246, 249 (5th Cir. 1994) (citing **Mississippi Power & Light v. United Gas Pipe Line Co.**, 760 F.2d 618 (5th Cir. 1985)).

[12] See **Millennium Restaurants**, 191 F.Supp.2d at 809.

### 1. Contracts Clause

Plaintiffs claim that Act 479 violates the Contracts Clause of the United States Constitution. Specifically, Plaintiffs contend that "the Act requires OGB, an agency of the State, [to] breach its obligations with respect to the Binding Agreements with Humana and the other successful bidder, United."[13] Plaintiffs additionally argue that Act 479 violates the Contracts Clause because it mandates that the OGB offer fully-insured plans from "Louisiana HMOs" despite having entered into contracts with Humana and United for administration of the State's self-insured HMO plan and its self-insured EPO option. After having heard testimony and upon a thorough inspection of the contracts in issue, the Court disagrees.

Article I, section 10 of the United States Constitution states, "No State shall … pass any … Law impairing the Obligation of Contracts…." The United States Supreme Court has affirmed that there exists "a dual standard of review" for impairment of contract cases.[14] Impairments of a state's own contracts "face more stringent examination under the Contract Clause than would laws regulating contractual relationships between private parties."[15] For both private and public

---

[13] Humana Mem. In Supp. Of Prelim. Inj. at 4.

[14] **United States Trust Company of New York v. New Jersey**, 431 U.S. 1, 26 n.25, 97 S. Ct. 1505, 1519 n.25, 52 L. Ed. 2d 92 (1977) (citing **Perry v. United States**, 294 U.S. 330, 350-51, 55 S. Ct. 432, 435, 79 L. Ed. 912, 80 Ct. Cl. 861 (1935)).

[15] **Allied Structural Steel Co. v. Spannaus**, 438 U.S. 234, 244 n.15, 98 S. Ct. 2716, 2716 n.15, 57 L. Ed. 2d 727 (1978) (citing **United States Trust Company**, 431 U.S. at 22-23, 97 S. Ct. at 1517 (1977)).

contracts, the initial inquiry is whether the state law has in fact operated as a substantial impairment of a contractual relationship. However, for public contracts such as the ones at issue in the instant case, the stricter Contract Clause standard requires a determination as to whether the impairment is both "reasonable and necessary to serve an important public purpose."[16]

Applying these principles to the instant inquiry, the Court must first determine whether Act 479 has, in fact, operated as a substantial impairment of Humana and United's contractual relationship with the OGB. This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial.[17] The Supreme Court has noted that the first two components of this inquiry are usually unproblematic, and typically addresses only the third.[18] In this case, however, the Court need not reach the question of substantial impairment, as the Court finds that while Plaintiffs do have a contractual relationship with the OGB, Act 479 does not impair that contractual relationship in any way.

Initially, as the Court noted in the Temporary Restraining Order, the contracts between the OGB and the Plaintiffs appeared to have been substantially impaired by the passage of Act 479.  However, evidence produced at trial contravenes this

---

[16] **United States Trust Company**, 431 U.S. at 25, 97 S. Ct. at 1519.

[17]**General Motors Corp. v. Romein,** 503 U.S. 181, 186-187 (U.S. 1992)

[18] **Id.**

assertion.

First, testimony elicited from Tommy Teague highlights the important fact that both contracts are terminable for cause and at will:

Q:    But the two ASO contracts have a term set forth of one year; correct?
A:    Yes.
Q:    And then at OGB's option, it can renew if it chooses for a year and renew again. Correct?
A:    Yes.
Q:    But both of those contracts – and you've had some discussion about it – there is a clause that says you can terminate for cause in 30 days. Correct?
A:    Yes.
Q:    You can terminate for convenience for any reason in 60 days. Correct?
A:    Yes. [19]

Looking to the text of the actual contracts, the Court notes that the Humana Medicare Advantage contract provides in § 24.0 that it can be terminated with only thirty (30) days notice stating: OGB may terminate the Contract at any time without penalty by giving thirty (30) days written notice to the other. Further, both the Humana and United ASO contracts provide that they may be terminated for convenience at any time without penalty "by giving sixty (60) days written notice to the other." Act 479 concerns the inclusion of fully-insured HMO plans in the State's benefits package. Even in the most attenuated sense, the passage of Act 479 does not affect the agreement between Plaintiffs and the OGB. Plaintiffs are still bound to offer their respective plans as part of the State's offering to its employees and

---

[19] Teague Testimony at 118.

retirees and the agreements between Plaintiffs and the OGB are also subject to

termination with or without cause.

Second, neither contract guarantees exclusivity as evidenced by (1) the lack

of exclusivity provisions in the contracts themselves, (2) the "Questions and

Answers" packet prepared by OGB and distributed among potential bidders before

any bids were accepted, and (3) testimony elicited at the hearing on the merits:

> Questions and Answers (Humana Exhibit 6):
> 22. Please indicate whether the State is looking for a single carrier. If
> not, please indicate the number of carriers the State envisions.
>
> Answer: The OGB will accept regional responses. The number of
> carriers will depend upon the responses of the NIC.[20]

...

> Tommy Teague's Testimony
> Q:    You've testified that the contracts that Humana and United had
>        never said anything about being exclusive. Correct?
> A:    Correct.
> Q:    And, for example, would it be fair to state that, when a provider
>        has a contract with a state in this context, the contract merely
>        allows them to become a choice for the participants in the
>        program. Correct?
> A:    Yes, it allows them to become a choice.
> Q:    And so, for example, with regard to United's EPO Administrator
>        Contract, it's up to the participants whether or not to select that
>        choice. Correct?
> A:    Correct.[21]

Therefore, and for the foregoing reasons, the Court finds that the passage and

implementation of Act 479 does not impair the contracts that Humana and United

---

[20] Questions and Answers Administrative Services Only (ASO) NIC, Question #22,
Humana Exhibit 6.

[21] Teague Testimony at 131.

have entered into with the OGB and there is no need for further inquiry.  The Court finds no merit in plaintiffs' Contracts Clause claims.

### 2. Due Process Clause

Plaintiffs argue that the award and now active execution of the Humana and United contracts (to administer the State's HMO and EPO plans respectively) create a "vested contractual property right protected by the Due Process Clause not to be forced to perform a contract after the State has impaired or changed the contractual expectations of the parties."[22] After careful consideration of the testimony and established law, the Court disagrees.

The Due Process Clause of the United States Constitution provides in pertinent part that, "No state shall...deprive any person of life, liberty, or property, without due process of law."[23] As such, the Due Process Clause is *only* implicated when a person has a constitutionally protected interest in life, liberty, or property.[24] Here, in order to prevail on a substantive due process claim, Plaintiffs must establish that each held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies.[25]  "To have a property interest in a

---

[22] United Proposed Findings of Fact and Conclusions of Law at 19.

[23] U.S. CONST. Amend. XIV.

[24]  Also See  **Green Turtle Landscaping Co. v. City of New Orleans**, 2003 U.S. Dist. LEXIS 17767, 7-8 (D. La. 2003) (citing **Conner v. Lavaca Hospital District**, 267 F.3d 426, 437 (5th Cir. 2001)).

[25] **Simi Inv. Co. v. Harris County**, 236 F.3d 240, 250 (5th Cir. 2000).

benefit, [a plaintiff] clearly must have more than an abstract need or desire for it. [The plaintiff] must have more than a unilateral expectation of it. [The plaintiff] must, instead, have a legitimate claim of entitlement to it."[26]

Even if plaintiff's argument for impairment of a property interest has merit however, in order to show a substantive due process violation, the plaintiff must "overcome a presumption of constitutionality" and "'establish that the legislature has acted in an arbitrary and irrational way."[27]

Therefore, and applying these principles, the starting point for the Court's inquiry is whether the passage of Act 479 impairs the private contractual rights that Humana and United obtained under their respective contracts with the OGB. In determining whether an impairment has arisen, the Court first considers what rights, if any, vested in Humana and United pursuant to those contracts. After a right or rights have been identified, the Court then examines how Act 479 alters those rights.

Humana argues that it holds vested contractual rights to exclusively administer the State's self-insured HMO Plan pursuant to the contract which it entered into with the OGB.[28] United argues that Act 479 effectively and substantially deprives it of its

---

[26] **Board of Regents v. Roth**, 408 U.S. 564, 577, 92 S. Ct. 2701 (1972).

[27] **Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry.**, 470 U.S. 451, 472, 105 S. Ct. 1441, 84 L. Ed. 2d 432 (1985) (quoting **Pension Benefit Gty. Corp. v. R.A. Gray & Co.**, 467 U.S. 717, 729, 104 S. Ct. 2709, 81 L. Ed. 2d 601 (1984)).

[28] Humana Compl. at 17. OGB accepted Humana's proposal for the August 2006 ASO NIC on February 26, 2007 and subsequently entered into a binding agreement with Humana to provide third-party administrative services for the self-insured HMO plan.

vested property right to administer the State's EPO plan for the benefit of private interests, such as Vantage. The court disagrees with both arguments.

While the Court finds that both Humana and United have an interest in administering the State's HMO and EPO plans respectively (by virtue of being awarded the contract by competitive bid), the Court does not agree that Act 479 effectively or even substantially deprives either of that interest.  Act 479 does nothing to impair or change the expectations that United and Humana should have reasonably had upon entering their contracts, nor does Act 479 prevent either from fulfilling their duties to actually perform their contractual obligations to offer an HMO and EPO plan under their respective contracts with the OGB.  Even with Act 479 in place, Humana still continues to offer a self-insured HMO option, United remains the sole provider of an EPO plan, and both companies' plans continue to be included amongst the several plans offered by the OGB to state employees.

The Court also finds that neither Plaintiff  has a property interest in any benefits either may have unilaterally expected to derive from their contracts with the OGB beyond the right to administer the State's HMO and EPO benefits plans respectively.  At the time each entered into their respective contracts with the OGB (and before the passage of Act 479), both were fully aware of the other health benefit options available for state employees to choose from, as well as the

possibility that other health benefit options may be offered at any time.[29] Further, with respect to United, given the fact that United's contract in particular offered a sliding fee scale based on the number of enrollees,[30] the Court finds that United had no reason to expect a guaranteed level of participation in its benefits program. Likewise, Humana had no reason to expect any degree of exclusivity or guarantee with respect to the number of enrollees.  Neither contract promised exclusivity nor did either give  any reason to expect exclusivity, as indicated by the testimony of

---

[29]Specifically, at the time of contract, the OGB offered several programs to State employees in addition to the EPO and the HMO options including the fully-insured HMO option offered by Vantage in Region 9, the PPO plan, and the MCO plan administered by the OGB.

[30] Teague Testimony at 131

Q:   And the contract that United has with the State, it doesn't guarantee a minimum number of customers or enrollees for United, does it?
A:   No.
Q:   In fact, I did notice that the NIC for the ASO contract, it attaches the standard contract that you're going to expect whoever wins that bid to sign. Correct?
A:   Yes.
Q:   I notice that, with regard to United, the NIC attachment contract has provided a blank for how much per-person administrative fee was going to be charged. Correct?
A:   Right. That's what they had to supply.
Q:   Okay. However, if you look at UHC number 2, if you could turn please to attachment A. Do you have that?
A:   Yes.
Q:   Rather than having just a set fee, United's Administrative contract has a sliding scale. Correct?
A:   Yes.
Q:   And it provides that the more enrollees in that EPO, the less per-person fee United is going to make. Correct?
A:   Yes.
...
Q:   Would you agree that the fact that there is a sliding scale, that that certainly indicates that there was some question as to how many people were going to be enrolling in the EPO administered by United?
A:   Oh, sure. Going into the open enrollment, they never know how many they may win or lose during that process.

Tommy Teague:

> Q:    Do the contracts contain any provision indicating they are exclusive?
> A:    No.
> Q:    Okay. You've seen contentions in this lawsuit, sir, have you not, that they, these two, these two companies expected these contracts to be exclusive. Have you seen those contentions?
> A:    Yes, sir.
> Q:    Prior to signing these contracts or at any time, did you give them representations that would allow them to reasonably believe these contracts would be exclusive?
> A:    We never contended they were exclusive.
> Q:    Based on your experience as administrator, as the director, and with your work in this area, would OGB issue contracts of this type for services similar to this that were exclusive in nature?
> A:    No.
> Q:    And tell the Court why not.
> A:    Because OGB needs the flexibility to be able to respond to market conditions, respond to new products, respond to mandates by the executive branch, and so we wouldn't tie our hands in that manner.[31]

Thus, the right granted by the contracts was the right to administer the state's HMO and EPO plans. Both plaintiffs continue to administer these plans and Act 479 has not deprived either of the right or ability to do so.

Thus, because the Court finds that Act 479 does not deprive either Humana or United of their rights to administer the State's HMO and EPO programs respectively, there is no need to determine whether the government acted arbitrarily or irrationally when it passed the legislation. The Court finds that Plaintiffs' due process claims lack merit.

---

[31] Teague Testimony at 117.

### 3. Commerce Clause

Plaintiffs' final claim is that Act 479 violates the Commerce Clause of the United States Constitution. Specifically, Plaintiffs contend that Act 479 is unconstitutional because it (1) mandates that the OGB utilize local companies regardless of whether the cost and/or quality of their services are more competitive than national companies; and, (2) erects barriers to participation solely against national companies that do business in Louisiana.[32] The Court agrees.

The Commerce Clause of the United States Constitution gives Congress the exclusive authority to regulate Commerce among the several States.[33] Although the Commerce Clause speaks only of Congress's power, it has long been understood that there is a dormant or negative aspect of the Commerce Clause that limits the power of the states to regulate commerce.[34] This doctrine, commonly referred to as the "Dormant Commerce Clause", is applicable here.

The Supreme Court has adopted a two-tiered approach to determine whether a state regulation violates the Commerce Clause.[35] The first part of the inquiry considers when a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state

---

[32]  Humana Mem. In Supp. Of Prelim. Inj. at 11.

[33]  U.S. CONST. art. I, § 8, cl. 3.

[34]  **Piazza's Seafood World, LLC v. Odom**, 448 F.3d 744, 749 (5th Cir. 2006).

[35]  **Brown-Forman Distillers Corp. v. New York State Liquor Auth.**, 476 U.S. 573, 578-579 (U.S. 1986).

interests.[36] Statutes that have satisfied the first tier of this approach have historically been struck down by the Supreme Court without further inquiry.[37]

The second part of the inquiry considers when a statute has only indirect effects on interstate commerce and regulates evenhandedly.[38] In those cases, the Court then examines whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.[39]

Applying this approach to the instant case, the Court finds that Act 479 fails both parts of the first tier: it discriminates against interstate commerce and its effect is to favor in-state economic interests over out-of-state interests.

Act 479 directly discriminates against interstate commerce and by effect, favors in-state economic interests over out-of-state interests. The Supreme Court has recognized that "in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate differential treatment of in-state and out-of-state economic interests that benefit the former and burden the latter."[40]  In the instant case, Act 479 favors "Louisiana HMOs" over out-of-state interests such as Humana

---

[36] **Id**. Also See, e. g., **Philadelphia v. New Jersey**, 437 U.S. 617 (1978); **Shafer v. Farmers Grain Co.**, 268 U.S. 189 (1925); **Edgar v. MITE Corp**., 457 U.S. 624, 640-643 (1982) (plurality opinion).

[37] **Id.**

[38] **Id.**

[39] **Id.**

[40] **Granholm v. Heald**, 544 U.S. 460, 472 (U.S. 2005).

and United. The Act specifically provides that "in the event that a Louisiana HMO submits a competitive offer, proposal, bid, or other response to [a solicitation for proposals], then the office *shall include* that Louisiana HMO in its plan of benefits for that region."[41] To qualify as a Louisiana HMO pursuant to the Act, a company must:

(1) Offer fully insured commercial and/or Medicare Advantage products;
(2) Be domiciled, licensed, and operating within the state
(3) Maintain its primary corporate office and at least seventy percent of its employees in the state; and
(4) Maintain within the state its core business functions which include utilization review services, claim payment processes, customer service call centers, enrollment services, information technology services, and provider relations.[42]

Given the definition of "Louisiana HMOs" and its use in the statute, the Court finds that Act 479 reflects a competitive local preference requiring the State to both (1) seek bids from in-state interests (Louisiana HMOs), and (2) award contracts to any in-state interest (specifically, a Louisiana HMO) responding to the solicitation for proposals. Out-of-state interests, on the other hand, are not afforded the same luxury of automatic solicitation and selection. Further, unlike the case for in-state interests, the Act does not even guarantee that an out-of-state interest will be selected for participation in the benefit plan offering for the State. For these reasons, the Court finds that Act 479, on its face and by effect, constitutes a clear violation of the Commerce Clause and is, therefore, unconstitutional. Since the first inquiry has

---

[41] Act 479 (2007).

[42] **Id.**

been satisfied by the conclusion that Act 479 unconstitutionally discriminates against interstate commerce or, at the least, has the effect of unconstitutionally favoring in-state economic interests over out-of-state interests, the Court need not extend its analysis to the second part of the inquiry.[43]

## B. Substantial Threat of Irreparable Harm

After a careful review of the record, the Court holds that irreparable harm will result to the plaintiffs unless injunctive relief is granted. Absent such relief, plaintiffs, as out-of-state entities, would no longer be able to fairly compete with Louisiana HMOs who, by operation of the Act, enjoy the automatic solicitation of proposals for and automatic inclusion in the State's offering of health benefits programs. Because Plaintiffs do not qualify as "Louisiana HMOs" within the meaning of the Act, neither would have equal footing to compete with in-state interests for the administration and implementation of the State's HMO benefits plans. Such lack of competitive opportunity, grounded solely on the basis of residence, is a direct violation of the Dormant Commerce Clause.

The law requires, therefore, that the enforcement and implementation of such an unconstitutional Act be prohibited in order to avoid the irreparable harm to the plaintiffs that would result.

---

[43] **Brown-Forman Distillers Corp.,** *supra* note 35. Also see **Pike v. Bruce Church, Inc.**, 397 U.S. 137, 142 (1970).

**C. Threatened Injury Outweighs Defendant's Potential Harm**

The Court also finds that the threatened injury to Plaintiffs outweighs the harm to the State.  The State suffers no harm from the issuance of this permanent injunction.  It is still free to issue NICs (through the OGB) for health benefit plans to include in its offering to state employees.  Further, the granting of this permanent injunction does not hinder the State from issuing NICs for additional health benefit plans to offer to State employees. The State is also free to choose Louisiana companies with which to contract to offer a variety of benefits plans to its employees without a mandate from the legislature requiring such action.  Finally, the State has no interest in enforcing an unconstitutional statute.  Thus, and for these reasons, the Court finds that the Plaintiff's threatened injury outweighs the State's potential harm.

**D. Public Interest**

Finally, to complete this analysis, the Court must decide whether the issuance of an injunction would undermine the public interest.  In the instant case, the public interest would be undermined if Act 479, which has been deemed to be unconstitutional, were allowed to stand. The public has no interest in being subjected to the application and enforcement of an unconstitutional statute. Thus, it is abundantly clear that granting the preliminary injunction best serves the public interest.

### III. Conclusion

For the foregoing reasons,

IT IS ORDERED that there be judgment herein in favor of plaintiffs, United Healthcare Insurance Company, Humana Insurance Company, and Humana Health Benefit Plan of Louisiana, Inc., and against defendants, Jerry Luke LeBlanc, in his official capacity as Commissioner of Administration for the State of Louisiana, and Tommy D. Teague, in his official capacity as Chief Executive Officer for the Louisiana Office of Group Benefits, declaring the provisions of Act 479 of the 2007 Regular Session of the Louisiana Legislature to be unconstitutional as a violation of the Commerce Clause of the United States Constitution.

IT IS FURTHER ORDERED that there be judgment herein in favor of plaintiffs, United Healthcare Insurance Company, Humana Insurance Company, and Humana Health Benefit Plan of Louisiana, Inc., and against defendants, Jerry Luke LeBlanc, in his official capacity as Commissioner of Administration for the State of Louisiana, and Tommy D. Teague, in his official capacity as Chief Executive Officer for the Louisiana Office of Group Benefits, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, permanently enjoining, prohibiting and restraining them, or their successors in office, from taking any action to implement or enforce the provisions of Act 479 of the 2007 Regular Session of the Louisiana Legislature.

IT IS FURTHER ORDERED that the request for award of attorney's fees on behalf of United Healthcare Insurance Company is DENIED as the court found that the provisions of Act 479 of the 2007 Regular Session of the Louisiana Legislature did not violate the Contracts Clause or Due Process Clause of the United States Constitution.

Signed in Baton Rouge, Louisiana, on October 31, 2007.

**RALPH E. TYSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**